Case 3:23-cv-00029 Document 15 Filed on 01/02/24 in TXSD Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
January 02, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| NATHANIEL LAMONTE LOFTIS, | § § § § § § § § § § § | |
| Plaintiff. | | |
| V. | | CIVIL ACTION NO. 3:23-cv-00029 |
| COMMISSIONER OF SOCIAL SECURITY, | | |
| Defendant. | | |

## <u>OPINION AND ORDER</u>

Plaintiff Nathaniel Lamonte Loftis ("Loftis") seeks judicial review of an administrative decision denying his application for disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Loftis and Defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner").[1] *See* Dkts. 9, 11. After reviewing the briefing, the record, and the applicable law, Loftis's motion for summary judgment (Dkt. 9) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 11) is **GRANTED**.

## BACKGROUND

On March 4, 2020, Loftis filed an application for Title II disability and disability insurance benefits alleging disability beginning August 6, 2018. His application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Loftis was not disabled. Loftis filed an appeal with the Appeals Council. The Appeals Council

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

denied review on November 18, 2022, making the ALJ's decision final and ripe for judicial review. Loftis timely filed this appeal on February 2, 2023.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

2

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id*. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id*.

## THE ALJ'S DECISION

The ALJ found at Step 1 that Loftis "has not engaged in substantial gainful activity since August 6, 2018, the alleged onset date." Dkt. 2-4 at 39.

The ALJ found at Step 2 that Loftis suffered from "the following severe impairments: degenerative disc disease of the lumbar and cervical spine, diabetes mellitus, hypertensive retinopathy, obstructive sleep apnea, neuropathy in feet, high blood pressure, obesity, and anxiety/depression." *Id*. at 40.

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments. *See id*.

Prior to consideration of Step 4, the ALJ determined Loftis's RFC as follows:

> [Loftis] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [he] can occasionally climb ramps and stairs, but should never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. [He] should avoid concentrated exposure to unprotected heights. He can frequently reach in all directions, including overhead, bilaterally. [He] can remember and follow detailed, but not complex instructions. He can perform the tasks assigned, but not at a production rate pace; however, he can meet the end of the day work goals. [He] can have occasional contact with supervisors, coworkers and the general public. He can occasionally adapt to changes in the workplace.

*Id*. at 42.

At Step 4, the ALJ found that "[Loftis] is unable to perform any past relevant work." *Id.* at 47.

At Step 5, relying on the Medical-Vocational Guidelines, the ALJ found that Loftis is not disabled because "there are jobs that exist in significant numbers in the national economy that [Loftis] can perform." *Id.*

## DISCUSSION

This social security appeal raises only one issue: whether "the ALJ committed reversible error [by] fail[ing] to develop the record and improperly support[ing] his RFC determination with his own lay interpretation of the medical data." Dkt. 10 at 7. I answer that question in the negative.

Loftis argues that remand is required because the ALJ rejected the only medical opinions of record and thus impermissibly "play[ed] doctor" by relying on his own lay interpretation of the medical evidence in crafting Loftis's RFC. *Id.* at 8. Loftis contends that under Fifth Circuit precedent, "'in the absence of substantial evidence, an ALJ's failure to rely on a medical opinion when resolving a claimant's occupational limitations constitutes reversible error.'" *Id.* (quoting *Ferrel v. Kijakazi*, No. 4:21-cv-03409, 2022 WL 17184426, at *4 (S.D. Tex. Oct. 11, 2022) (citing *Ripley v. Chater*, 67 F.3d 552, 557–58 (5th Cir. 1995))). This is a true statement of law, but it does not accurately describe this case.

Here, the ALJ *did* rely on medical opinions in crafting Loftis's RFC. Specifically, the ALJ found:

> The opinion of the state agency psychologists that [Loftis] has mild ability to understand, remember and apply information; moderate ability to interact with others; moderate ability to concentrate, persist, or maintain pace and mild ability to adapt or manage oneself *is somewhat persuasive* because it is *generally consistent with the evidence of record* available at the time of their review, but additional limits are supported by the more recent evidence of record.
>
> . . . .
>
> The undersigned finds these opinions only somewhat persuasive. While they are consistent with the determination that

4

> [Loftis]'s conditions are not disabling, they are internally inconsistent in that they assess both mild and moderate limitations to [Loftis]'s ability to understand, remember and apply information and adapt or manage oneself, and then assign both limitations and no limitations to [his] ability to concentrate, persist, or maintain pace, and interact with others. Moreover, the evidence available at the hearing level supports a finding of severe impairments that limit [Loftis]'s abilities in each of the four B criteria, but to no more than a moderate degree.

Dkt. 2-4 at 46 (emphasis added).

The cases Loftis invokes are inapposite. For example, in *Ferrel*, the ALJ found the opinions of the state agency medical consultants *entirely* unpersuasive *and* relied on stale medical evidence to craft the claimant's RFC. *See* 2022 WL 17184426, at *4. Here, by contrast, the ALJ found the state agency medical consultants' opinion somewhat persuasive "and the evidence of record . . . included records from the relevant period." Dkt. 11 at 10 n.4. Similarly, in *Esther D.J. v. Kijakazi*, No. 5:20-cv-239, 2022 WL 5434335, at *5 (S.D. Tex. Aug. 3, 2022), the ALJ rejected *all* medical opinions in the record. And unlike in this case, some of the opinions in *Esther* would have imposed *greater* limitations. *See id*. The court in *Fleming v. Saul* said it best:

> [T]his is not a case in which there are no medical opinions of record, and the ALJ independently analyzed the raw medical data without any guidance from medical professionals. Nor is this a case in which the ALJ truly rejected all of the medical opinions of record and fashioned a completely distinctive RFC. Experienced ALJs can draw their own conclusions as to disability status based on accurate medical information. What Plaintiff characterizes as the ALJ substituting his opinion in this case is actually the ALJ properly interpreting the medical evidence to determine his capacity for work.

No. SA-19-cv-00701, 2020 WL 4601669, at *9 (W.D. Tex. Aug. 10, 2020) (cleaned up). Here, as in *Fleming*, the fact "[t]hat these medical experts found Plaintiff to be capable of a [higher level of work] . . . is ultimately supportive of the ALJ's RFC determination." *Id*.

Loftis takes issue with the fact that, in one sentence, the ALJ identified the "*entire medical record*" as warranting greater mental restrictions. Dkt. 10 at 8. But

5

Loftis overlooks all the times prior to that sentence that the ALJ identified specific parts of the record that support his RFC determination:

> Mental status examination revealed the claimant had intact cognition, good judgment, good impulse control and good insight. There were no hallucinations, delusions or dissociation. The claimant also had no paranoia, and his thought process was spontaneous, focused and goal directed (Exhibit B1F/28).
>
> Although [Loftis] reported feeling down, this was secondary to being the caretaker of his parents and not having time to do anything for himself (Exhibit B1F/75). The record documents [Loftis] repeatedly denied suicidality or homicidality (Exhibit B1F/21, 26, 33, 68, 125, 139, 174). Another examination indicates [his] attitude was cooperative. He was respectful and had normal speech. He reported an anxious mood, but his tone was normal and thought presentation was also normal (Exhibit B1F/22). It is noted that [Loftis] had one bad panic attack; however, he thought it stemmed from his diabetic medication rather than emotional instability (Exhibit B1F/25).
>
> Additionally, a depression screening score was 2, which indicates a negative screen on a depression scale (Exhibit B6F/72). [Loftis] reported that he was taking his medications as prescribed. He stated, "I am cool doc; the panic attacks I used to have with the diabetic medicine have decreased, just a few now, doing okay on all my meds" (Exhibit B6F/87). Then, he reported that his panic attacks were stable (Exhibit B7F/18).
>
> Despite his testimony regarding daily irritability and anger outbursts, the records indicate [Loftis] was not interested in individual therapy or anger management (Exhibit B12F/28). It is also noted that [Loftis] was taking his anti-psychotic medications only as needed and thus, his medical source indicated that they would change the prescription to as needed (Exhibit BF/48).
>
> [Loftis] admitted that he has a room at his parents' home, and he helps and supports them both. He also works on motors in his garage (Exhibit B1 F/26). He reported, "I take care of them the best that I can" (Exhibit B1F/32). He is responsible for his own medications and engages in aquatic therapy three times per week (Exhibit B1F/38). He reported and the records show the claimant is independent in his activities of daily living (Exhibit 7F/2). He enjoyed walking his dog and watching TV (Exhibit B9F/45). Moreover, the claimant is able to tend to his personal hygiene needs such as bathing, dressing, feeding himself, and toileting. He prepares his daily meals, completes laundry, mow[s] the yard, go[es] outside at least five days

> out of the week, drive[s] a vehicle, shop[s] in stores and handle[s] money. He also cares for a dog, and visits with a friend 3 to 4 times per week (Exhibit B7E and hearing testimony). Thus, [Loftis] engages in activities that are not limited to the extent on what to expect, given his complaints of disabling symptoms and limitations.

Dkt. 2-4 at 44–45. Thus, even if Loftis is correct that "the ALJ did not rely on any medical opinion evidence in crafting RFC restrictions related to [Loftis]'s limitations in understanding, remembering, and applying information and adapting or managing oneself" (Dkt. 10 at 10), the RFC is still supported by substantial evidence for the reasons stated above.

In his reply, Loftis argues for the first time that his "cervical imaging results[] were too complex for an ALJ to guess at the corresponding functional limitations, and thus the ALJ should have recontacted these doctors or ordered a consultative examination." Dkt. 14 at 2. I do not understand this argument because Loftis did undergo a physical consultative examination at the Social Security Administration's expense with Dr. Sandeep Gupta on February 12, 2021. *See* Dkt. 2-8 at 402–03. Dr. Gupta observed that Loftis's "x-rays of his lumbar spine showed no acute abnormality, but showed some degenerative changes. The x-rays were not significantly different from his x-rays from earlier in 2020." *Id.* at 403. I recognize that Dr. Gupta's report does not constitute a medical opinion "because it does not provide a function-by-function assessment of [Loftis]'s abilities." Dkt. 2-4 at 46. But "[a] consultative evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise a suspicion concerning a *non-exertional* impairment." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (emphasis added). Loftis does not bother to explain how his cervical imaging results implicate a non-exertional impairment.

To the extent Loftis believes a *psychological* consultative examination should have been ordered, he fails to explain why he did not request one at the hearing, or to further develop the record at any point prior to receiving the ALJ's unfavorable decision. *See Cavazos v. Comm'r of Soc. Sec.*, No. 4:22-cv-01347,

7

2023 WL 6393884, at *4 (S.D. Tex. Sept. 29, 2023) ("[W]hile Cavazos had consistently raised her mental impairments before the agency, she did not request a consultative exam at or leading up to the hearing."). To hold now "that [Loftis] may elect to forego agency-directed exams and later feign injustice for not having received one—would be inequitable and contravene the purpose of the process." *Id.* This argument holds just as true for a psychological consultative examination as it does for a physical consultative examination.

Even if Loftis had shown that a consultative medical examination was necessary, he fails to demonstrate prejudice. In the Fifth Circuit, prejudice is established when a plaintiff shows that a consultative medical examination "could and would have adduced *evidence* that might have altered the result." *Brock*, 84 F.3d at 728 (emphasis added) (quotation omitted). Loftis argues he demonstrated prejudice by "identifying how the failure to develop the record led to the Step 5 finding that there were jobs in the national economy [he] could perform, when in fact an RFC based on the ALJ's lay interpretations failed to accurately reflect [his] work-related limitations." Dkt. 14 at 3. But the sheer possibility of a different result is not *evidence*. Because Loftis does not point to any evidence that demonstrates "how additional consultative examinations would have led to a more favorable decision," he fails to carry his burden to demonstrate prejudice. *Williams v. Berryhill*, No. 3:18-cv-1913, 2019 WL 4393635, at *13 (N.D. Tex. Sept. 13, 2019).

## CONCLUSION

For the reasons discussed above, Loftis's motion for summary judgment (Dkt. 9) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 11) is **GRANTED**.

SIGNED this 2nd day of January 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE